******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., concurring in the judgment. I would dismiss on other grounds. The statute at issue, General Statutes § 9-368, provides that, when three electors submit a sworn, written complaint to a judge of the Superior Court, averring that a violation of the election laws has occurred in their town "and can be proved, such judge shall issue a warrant for the arrest of the accused." Although the duty to issue an arrest warrant appears to be mandatory if the statutory criteria are met, the majority dismisses the present writ of error on the ground that the plaintiffs in error[1] lacked "a judicially cognizable interest in the prosecution or nonprosecution of another." Part II of the majority opinion. The majority's conclusion is flawed because § 9-368 bestowed on the plaintiffs in error a judicially cognizable interest in the issuance of the requested arrest warrants. The plaintiffs in error were deprived of this statutory interest by the trial court's denial of their applications, and, therefore, they were classically aggrieved for the purpose of appellate review. I nevertheless conclude that the present writ of error must be dismissed because it is not the proper procedural vehicle by which to challenge the denial of an arrest warrant application filed in accordance with § 9-368. The plaintiffs in error were parties to the underlying proceeding who were aggrieved by the final judgment of the trial court, and appellate review is available only by means of a direct appeal under General Statutes § 52-263.[2] For this rea-

---

[1] The plaintiffs in error are three electors in the city of Bridgeport: Diahann Phillips, Alison Scofield, and Albert Bottone.

[2] General Statutes § 52-263 provides that "[u]pon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

son, I would dismiss the present writ of error without prejudice to the filing of a motion for permission to file a late appeal.[3]

A right of appellate review exists under § 52-263 if the appellant can "establish in the following sequence that: (1) it was a party to the underlying action; (2) it was aggrieved by the trial [court's] decision; and (3) the appeal is from a final judgment." *State* v. *Salmon*, 250 Conn. 147, 162–63, 735 A.2d 333 (1999). In contrast, appellate review is available by means of a writ of error "only . . . from a final judgment of the Superior Court to the Appellate Court" in cases involving, among other things, "a decision binding on an aggrieved nonparty . . . ." Practice Book § 72-1 (a) (1). One of the "primary distinction[s] between appeals and writs of error" is that "[a] writ of error is the means by which a nonparty may seek review of a final judgment," whereas "[a]n appeal is the means by which a party may seek review of a final judgment." *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 726, 207 A.3d 493 (2019). The two avenues of relief, although similar, are mutually exclusive, and a writ of error cannot "be brought in any civil or criminal proceeding for the correction of any error where . . . the error might have been reviewed by process of appeal, or by way of certification . . . ." Practice Book § 72-1 (b) (1).

It is undisputed that this case arose from an "action" in the trial court that culminated in a final judgment. See *Board of Education* v. *Tavares Pediatric Center*, 276 Conn. 544, 555, 888 A.2d 65 (2006) ("[T]he word action means the lawful demand of one's right in a court of justice; and in this sense it may be said to include any proceeding in such a court for the purpose of

---

[3] In light of my conclusion, I need not address whether statutory aggrievement is a jurisdictional prerequisite to the filing of a writ of error. See part I of the majority opinion.

obtaining such redress as the law provides. . . . It includes not only the usual civil action instituted by process but also proceedings initiated by petition . . . stipulation . . . or motion." (Citation omitted; emphasis omitted; internal quotation marks omitted.)); see also *In re Naturalization of Fordiani*, 98 Conn. 435, 444–45, 120 A. 338 (1923) (petition for naturalization is action from which party who was denied relief may appeal); *Waterbury Blank Book Mfg. Co.* v. *Hurlburt*, 73 Conn. 715, 717–18, 49 A. 198 (1901) (arbitration proceeding entered into by stipulation and accepted by trial court was action from which "[an] appeal to the Superior Court was well taken"). I therefore focus my analysis on whether the plaintiffs in error (1) were parties to the underlying action, and (2) were aggrieved by the decision of the trial court.

"[T]he word party has a technical legal meaning, referring to those by or against whom a legal suit is brought . . . the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons." (Internal quotation marks omitted.) *State* v. *Salmon*, supra, 250 Conn. 154. In the present case, the plaintiffs in error initiated a judicial proceeding by filing with a judge of the Superior Court a complaint and arrest warrant application pursuant to § 9-368. See *State* v. *One or More Persons over Whom the Court's Jurisdiction Has Not Yet Been Invoked*, 107 Conn. App. 760, 767, 946 A.2d 896 (The plaintiff, who sought the return of certain seized property, was a party to the underlying action because he "initiated the underlying proceeding, actively participated in the proceeding and his rights were the subject of the proceeding. The legal interest that the plaintiff sought to vindicate and on which the court rendered judgment was central, not ancillary, to the proceeding."), cert. denied, 289 Conn. 912, 957 A.2d 880 (2008). Their application for relief complied with the statutory conditions and was

in proper form, but the trial judge denied the requested relief on the ground that § 9-368 was unconstitutional.[4] Under these circumstances, the plaintiffs in error clearly were parties to the underlying action.

As for aggrievement, it is well established that a party who initiates an action in the trial court is aggrieved for the purpose of seeking appellate review if he or she can (1) "demonstrate a specific personal and legal interest in the subject matter of the [trial court's] decision, as distinguished from a general interest shared by the community as a whole," and (2) "establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *In re Allison G.*, 276 Conn. 146, 157, 883 A.2d 1226 (2005); see also General Statutes § 52-263 (focusing on aggrievement "*by the decision of the court or judge*" (emphasis added)). These requirements indisputably are met if a party to the underlying action had standing to seek relief in the trial court and the trial court denied the requested relief.[5] See *In re*

---

[4] The fact that there was no opposing party in the underlying proceeding does not render the trial judge's final decision on the application for relief unappealable under § 52-263. See, e.g., *In re Naturalization of Fordiani*, supra, 98 Conn. 445 (adverse decision on petition for naturalization was appealable final judgment, even though there was "in fact no adverse party").

[5] Our case law in the attorney grievance context is not inconsistent with this conclusion. Cf. footnote 9 of the majority opinion. A private citizen lacks standing to file an attorney grievance complaint in the trial court. See *D'Attilo* v. *Statewide Grievance Committee*, 329 Conn. 624, 642–44, 188 A.3d 727 (2018). Under the statutory scheme governing attorney grievance complaints, such complaints must be filed with the statewide bar counsel or the Statewide Grievance Committee. See General Statutes § 51-90e (a) (1); General Statutes § 51-90d (b) (1). If a complaint is dismissed by those decision makers following an investigation, there is no right of direct appeal to the trial court; nor is there a private right of action against them. See *D'Attillo* v. *Statewide Grievance Committee*, supra, 642–44. By contrast, the present case does not involve a statutorily authorized *administrative proceeding*; it involves a statutorily authorized *judicial proceeding* before a judge of the Superior Court. The plaintiffs in error initiated the present action pursuant to a statute that explicitly conferred on them the right to seek relief in the trial court for the violation of election laws. See General Statutes § 9-368. We may question whether it is a wise policy choice to grant

*Ava W.*, 336 Conn. 545, 555–57, 248 A.3d 675 (2020) (concluding that parent whose parental rights were terminated was aggrieved by trial court's decision denying posttermination visitation because she was party to underlying termination litigation who requested relief that was denied); *In re Allison G.*, supra, 161–65 (concluding that Commissioner of Children and Families was aggrieved by dismissal of her claim that minor child was neglected, even though commissioner prevailed on claim that minor child was uncared for, because she was party to underlying action whose request for relief partially was denied). Parties to an action who have been denied relief by the trial court suffer an injury distinct from other members of the community due to their party status and participation in the trial court proceedings, regardless of whether they would prevail on the merits of their underlying claims. See, e.g., *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 276, 92 A.3d 247 (2014) (appellate aggrievement does not depend on party's ability to prevail "on the merits of the legal claim"); *Seymour* v. *Seymour*, 262 Conn. 107, 113, 809 A.2d 1114 (2002) ("[a]ggrievement . . . is a threshold jurisdictional issue that must be demonstrated independently of whether the trial" court's judgment was proper); *Healey* v. *Mantell*, 216 Conn. App. 514, 524, 285 A.3d 823 (2022) ("[a]ggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" (internal quotation marks omitted)).

The plaintiffs in error were aggrieved by the decision of the trial judge because they were parties to the under-

electors statutory standing to seek arrest warrants in the trial court, but we cannot substitute our judgment for that of the legislature. See, e.g., *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) ("[i]n areas [in which] the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature").

lying action who had standing to request relief pursuant to § 9-368 and their request for relief was denied. As the majority points out, it is undisputed in this case that "§ 9-368 provides the plaintiffs in error standing to seek arrest warrant applications from a judge of the Superior Court." Part I of the majority opinion; see *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 487, 815 A.2d 1188 (2003) (Statutory standing "exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory [standing], particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.)). By virtue of § 9-368, the plaintiffs in error had a specific, personal, and legal interest in the issuance of the requested arrest warrants. See General Statutes § 9-368; see also *Seymour* v. *Seymour*, supra, 262 Conn. 114 (party to underlying action is aggrieved if not awarded full relief sought). That interest was created by the legislature when it enacted § 9-368 approximately 150 years ago.[6] See General Statutes (1875 Rev.) tit. XX, ch. 13, pt. 1, § 8. The statute is old and today may very well be antiquated, obsolete, or even unconstitutional. But it has never been repealed, and this court is not at liberty to ignore the undeniable fact that its plain language expresses a legislative intention to confer standing on a defined class of persons—plainly including the plaintiffs in error—to seek and obtain an arrest warrant under specified conditions.

---

[6] Although the legislature has made various technical amendments to § 9-368 over the years, it has not repealed the statute. See, e.g., Public Acts 1978, No. 78-280, § 1 (changing "county" to "judicial district"); Public Acts 1976, No. 76-436, § 163 (changing "court of common pleas" to "Superior Court"). Just this year, the legislature repealed "[a]ll special acts or provisions thereof inconsistent with" various statutes, including § 9-368. See General Statutes § 51-274. We must presume that the legislature acted intentionally by choosing to repeal statutes inconsistent with § 9-368 while leaving that statute intact.

The statutory interest of the plaintiffs in error in the requested arrest warrants was injuriously affected by the trial judge's decision denying their application for relief. See, e.g., *In re Ava W.*, supra, 336 Conn. 557 (for purpose of appellate review, "the respondent suffered an injury as a result of the trial court's decision because the trial court denied her request for posttermination visitation"); *Wellswood Columbia, LLC* v. *Hebron*, 327 Conn. 53, 88, 171 A.3d 409 (2017) (appellant is aggrieved for purpose of appellate review when trial court denies appellant's request for relief). As a result, the plaintiffs in error were aggrieved by the decision of the trial judge, and appellate review is available. See *In re Wood*, 333 Pa. Super. 597, 600–601, 482 A.2d 1033 (1984) (concluding that private party had "a right of appeal from the order of the trial judge disapproving his [private] criminal complaint" because he "was a party to the proceedings below").

The majority concludes that the plaintiffs in error were not aggrieved by the decision of the trial judge because they lacked a judicially cognizable interest in the issuance of the requested arrest warrants. This contention overlooks the fact that § 9-368 confers statutory standing on the plaintiffs in error to seek and obtain the arrest warrants upon meeting the statutory criteria. Thus, although the majority is correct that a private citizen *ordinarily* lacks standing to seek the arrest of an individual for an alleged violation of criminal law, the legislature has enacted a statute that establishes "legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *Linda R. S.* v. *Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973). By its own terms, *Linda R. S.* addresses the situation in which there is no "statute expressly conferring standing" on the plaintiff to seek and obtain an arrest warrant. Id., 617. Because there was no statue conferring standing on the

petitioner to seek the arrest of the respondent for his failure to make child support payments, the United States Supreme Court held that the petitioner lacked "standing to contest the policies of the prosecuting authority . . . ." Id., 619; see id. 615–16. By contrast, in the present case, there is a statute—namely, § 9-368—that expressly confers standing on the plaintiffs in error, as electors in the relevant jurisdiction, to seek and obtain an arrest warrant for the alleged violation of election laws.

Unlike *Linda R. S.* and the other federal cases on which the majority relies,[7] the issue in this case is not whether the plaintiffs in error had standing in the trial court to commence the present action but, rather, whether they were aggrieved by the decision of the trial judge for the purpose of appellate review. As I previously explained, they were aggrieved by the decision of the trial judge because he denied them the very relief that they requested. It is not disputed that the plaintiffs in error had standing to seek judicial relief in the trial court; it necessarily follows that they were aggrieved for purposes of appeal when that relief was denied.

The majority asserts that § 9-368 grants the plaintiffs in error a right "to seek the issuance of an arrest warrant, and nothing more."[8] Footnote 8 of the majority

---

[7] See *Leeke* v. *Timmerman*, 454 U.S. 83, 84, 102 S. Ct. 69, 70 L. Ed. 2d 65 (1981); *Younger* v. *Harris*, 401 U.S. 37, 42, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); *Bailey* v. *Patterson*, 369 U.S. 31, 33, 82 S. Ct. 549, 7 L. Ed. 2d 512 (1962); *Poe* v. *Ullman*, 367 U.S. 497, 501, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961). Likewise, the defendant in error, the state, relies on case law involving standing in the trial court, not appellate aggrievement. See *Lazar* v. *Ganim*, 334 Conn. 73, 84–92, 220 A.3d 18 (2019); *Monroe* v. *Horwitch*, 215 Conn. 469, 472–73, 576 A.2d 1280 (1990); *Kelly* v. *Dearington*, 23 Conn. App. 657, 662–63, 583 A.2d 937 (1990).

[8] The majority's conclusion as to the scope of relief available under § 9-368 cannot be reconciled with its assertion that "questions of statutory intent" are "outside the scope of the aggrievement inquiry presented by the parties in this appeal . . . ." Footnote 6 of the majority opinion. Inherent in and essential to the majority's resolution of the aggrievement issue is its

opinion. It does so without addressing the mandatory language of the statute, which provides that the trial judge "shall issue" the warrant if the statutory prerequisites are met. General Statutes § 9-368. Rather than analyzing the language, history, or purpose of § 9-368, the majority relies on Massachusetts case law holding that a Massachusetts statute confers on private citizens only the procedural right to ask for an arrest warrant, not the substantive right to receive one, and that, once " 'the court responds to [the] application, the private party's rights have been satisfied.' " Part II of the majority opinion, quoting *In re Two Applications for a Criminal Complaint*, 493 Mass. 1002, 1004, 218 N.E.3d 641 (2023), cert. denied sub nom. *Waters* v. *Kearney*, U.S. , 144 S. Ct. 2694, L. Ed. 2d (2024). I find the Massachusetts authority cited by the majority unpersuasive. First, § 9-368 is markedly different from the Massachusetts statute because it appears to impose a *mandatory* duty on the trial court to issue an arrest warrant upon proper application,[9] whereas the Massa-

---

determination that the rights embodied in § 9-368 "are limited to the filing of an application and court action on that application"; (internal quotation marks omitted) part II of the majority opinion; and "nothing more." Footnote 8 of the majority opinion.

[9] The plaintiffs in error argue that a proper arrest warrant application under § 9-368 includes a showing of probable cause, and I do not suggest otherwise. As the majority points out, the plaintiffs in error do not "maintain that their applications automatically mandated that the judge issue the arrest warrants . . . ." Footnote 8 of the majority opinion. Instead, they maintain that the trial court erred by denying their application on constitutional grounds without reaching the merits of whether probable cause existed to issue the requested arrest warrants.

To the extent that the majority implies that the plaintiffs in error concede that § 9-368 confers a mere procedural right to file an application for an arrest warrant and nothing more, this is mistaken. See id. In their brief to this court, the plaintiffs in error argue that the trial court should have reached the merits of their application and adjudicated whether there was probable cause to find that a violation of the election laws had occurred. In their request for relief in this court, the plaintiffs in error ask us to "apply the law (§ 9-368) and [to] restore public confidence in our institutions by reversing the trial [judge's decision] and remanding this case *for the issuance of* [*the*] *arrest warrants* . . . ." (Emphasis added.) The plaintiffs in error

chusetts statute imposes a *discretionary* duty. Compare General Statutes § 9-368 (trial court "*shall issue* a warrant for the arrest of the accused" (emphasis added)), with Mass. Ann. Laws c. 218, § 35A (LexisNexis 2011) (trial court "*may* upon consideration of the evidence . . . cause process to be issued" (emphasis added)). See generally *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004) ("[d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature," whereas word "may" ordinarily "imports permissive conduct and the conferral of discretion" (internal quotation marks omitted)). Second, § 9-368 authorizes the trial court only to issue an arrest warrant, leaving open the possibility that public authorities may decline to initiate a criminal prosecution after the issuance of the warrant, whereas the Massachusetts statute authorizes the trial court to issue a criminal complaint commencing a criminal action. See *Boston Globe Media Partners, LLC* v. *Chief Justice of the Trial Court*, 483 Mass. 80, 83–84, 130 N.E. 3d 742 (2019) (recognizing that Mass. Ann. Laws c. 218, § 35A, authorizes private citizen to apply "for a criminal complaint" in connection with "a person [who] has *not* been arrested or indicted" (emphasis in original)). Lastly, and perhaps most fundamentally, regardless of Massachusetts law regarding aggrievement, as I discussedpreviously, under our precedent, a party whose request for relief has been denied by the trial court is aggrieved for the purpose of appellate review. The majority's conclusion otherwise "cannot be reconciled with established [Connecticut] law." *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, supra, 312 Conn. 276.

Based on the foregoing, my view is that the plaintiffs in error are aggrieved by the decision of the trial judge

unquestionably claim that they were entitled to the issuance of the arrest warrants after demonstrating probable cause.

and had a statutory right of appeal under § 52-263. The problem remains that they did not file an appeal. They instead filed a writ of error. Although the difference under the present circumstances appears to me to be one of form rather than substance, this court has held that it lacks jurisdiction over a writ of error filed by a party with a right of appellate review under § 52-263. See *Micek-Holt* v. *Papageorge*, 326 Conn. 915, 920, 163 A.3d 1200 (2017) (dismissing writ of error because appellant was party to underlying action with right of appeal); *State* v. *One or More Persons over Whom the Court's Jurisdiction Has Not Yet Been Invoked*, supra, 107 Conn. App. 767–68 (same); see also Practice Book § 72-1 (b) (1). In accordance with this authority, the present writ of error must be dismissed.

The confusion of the plaintiffs in error as to the correct way to challenge the trial court's judgment is understandable. My research reveals only one case citing § 9-368 since its enactment more than 150 ago, and that case involved a damages action against the trial judge who presided over a criminal matter originating from the issuance of an arrest warrant under § 9-368, rather than an appeal from the denial of an arrest warrant application. See *Ferraiuolo* v. *Henchel*, 21 Conn. Supp. 445, 445–46, 156 A.2d 798 (1959). In their appellate brief to this court, the plaintiffs in error state that the statute is so old and "has been so rarely used in state history" that the trial court clerk's office initially seemed to be unaware of its existence and counsel for the plaintiffs in error himself "did not even know of it until it was brought to his attention in this case." Given the dearth of case law regarding § 9-368 and its manner of operation, I am not surprised that there was a legitimate misunderstanding as to the correct method of challenging the propriety of a trial judge's denial of an application for relief under the statute.

For the foregoing reasons, I would dismiss the writ of error without prejudice to the filing of a motion for permission to file a late appeal in the Appellate Court. See Practice Book § 60-2 (5) (late appeal may be filed "for good cause shown"). I express no opinion on the merits of such a motion should it be filed or the resolution of any of the constitutional issues that may be raised on direct appeal, if permitted. I conclude only that the plaintiffs in error were aggrieved by the trial judge's denial of their application for relief and that appellate review is available under § 52-263. Because I ultimately agree with the result reached by the majority but not its conclusion that the trial judge's decision is completely insulated from appellate review, I concur in the judgment.